Society of the Divine Word, an Illinois Not-for-Profit Corporation, and Missionary Sisters Servants of the Holy Spirit, an Illinois Not-for-Profit Corporation, et al., Plaintiffs-Appellees, v. County of Cook, a Body Politic and Corporate, et al., Defendants-Appellants.

Gen. No. 53,193.

First District.

March 21, 1969.

John J. Stamos, State's Attorney of Cook County, of Chicago (Dean H. Bilton, Charles A. Berke, and Ronald Butler, Assistant State's Attorneys, and Edward J. Hladis, Chief of Civil Division, of counsel), Klein, Thorpe, Kasson & Jenkins, and Frederick O. Floberg, of Chicago, for appellants.

Walter P. Murphy, Eugene Dooner Murphy, Francis L. Zimmermann, Martin, Craig, Chester & Sonnenschein, Sydney G. Craig, Lyle L. Richmond, of Chicago, and Robert J. Mangler, of Wilmette, for appellees.

TRAPP, P. J.

Defendant, Cook County, and intervening defendants appeal from a judgment of the Circuit Court of Cook County declaring the Cook County Zoning Ordinance unconstitutional to the extent that it prohibits use of plaintiffs' property for a sanitary landfill. The judgment enjoins interference with the use of plaintiffs' property as a landfill and orders the defendant county to issue any

necessary license and permits for the work in conformity with the judgment and in conformity with the regulations of the county. The plaintiffs are Society of the Divine Word and Missionary Sisters, Servants of the Holy Spirit, each an Illinois not-for-profit corporation, which own the land in question. Intervening plaintiffs are the Villages of Winnetka, Kenilworth, Wilmette, Glencoe and the City of Evanston, each of which intervening plaintiffs desire the subject property to be used for a sanitary landfill. Intervening defendants are the Villages of Northbrook and Glenview. They desire the proposed use to be prohibited on the plaintiffs' property.

Defendants contend that the Villages of Glenview and Northbrook have a right to enforce the Illinois nuisance statute to prevent the proposed use, and a right to be protected by the county zoning ordinance. They also contend that the prohibition of a sanitary landfill by the county zoning ordinance is a reasonable regulation and that the trial court committed errors, especially in regard to the admission of evidence.

We shall first consider the applicability of the Illinois nuisance statute to the situation for the reason that if it is applicable to forbid the proposed use of the subject property, it would be an effective justification of the action of the county in denying a permit for the proposed use and would give persons affected by the nuisance a right to have the statute enforced. Such, in either case, would effectively prevent the proposed use of the property for a sanitary landfill. If the nuisance statute does not apply, we are remitted to the question of the validity of the zoning regulation.

The nuisance statute relied upon is Ill Rev Stats 1965, c 100½, § 27, as follows:

> "27. Dumping garbage. It is unlawful for any person to dump or place any garbage or other offensive substance within the corporate limits of any city, village or incorporated town other than (1) the city,

village or incorporated town within the corporate limits of which, such garbage or other offensive substance shall have originated, or (2) a city, village or incorporated town which has contracted with the city, village or incorporated town within which the garbage has originated, for the joint collection and disposal of garbage; nor shall any such garbage or other offensive substance be dumped or placed within a distance of one mile of the corporate limits of any other city, village or incorporated town

"Any person violating any provisions of this section is guilty of a misdemeanor. . . ."

The substance of the above provision was a part of the Criminal Code which was added to other nuisance prohibitions of the Criminal Code in 1933 (Laws of 1933, p 475). In 1963, it was transferred to the Illinois nuisance statute, c 100½, Ill Rev Stats.

Also in 1963 the legislature adopted "An Act to prohibit open garbage dumps or sites," (Ill Rev Stats, c 111½, § 461). It provided:

"No person shall operate or cause to be operated an open dump or site for the placing, depositing or dumping of garbage. Any such dump or site in existence on the effective date of this Act shall be completely covered with earth within one year after the effective date of this Act.

"*This Act shall not apply to the sanitary landfill and incinerator methods of garbage disposal.*" (Emphasis supplied.)

In 1965 the legislature adopted "An Act in relation to the registration and regulation of refuse disposal sites and facilities, etc." (Ill Rev Stats, c 111½, § 471 et seq.) This Act required the Department of Public Health to prescribe minimum standards for the location, design, construction, sanitation, operation and maintenance of

367

disposal sites and facilities. Refuse was defined to include garbage. It applied to operation of sites by both private individuals and governmental bodies and it required registering all sites with the Department of Public Health. The Act did not apply to counties which had established a county department of public health and provided for exemption certificates for governmental bodies which had regulations meeting minimum standards of refuse disposal provided by the State Department of Public Health.

The testimony of Matthew D. R. Riddell, registered professional engineer and practicing sanitary engineer for twenty years, that the sanitary landfill method of disposal was pioneered by New York City and Fresno, California, in the 1930's clearly indicates that this method is of relatively recent origin. In a statute regarding open dumps, adopted in 1963 (c 111½, § 461, Ill Rev Stats), the legislature made sanitary landfills and incinerators an exception by express statement. Since the statute prohibits open dumps everywhere, it is a legislative recognition of the fact that a sanitary landfill is a different thing and is not objectionable. The use of the word "sanitary" by the legislature in connection with the word landfill clearly indicates a legislative recognition that a landfill which includes garbage or other material also properly subject to incineration, is not a nuisance.

█ By reason of the recent origin of the sanitary landfill method of disposal and by reason of the subsequent legislative recognition of the same as unobjectionable, we cannot conclude that section 27 of the Illinois nuisance statute (c 100½, Ill Rev Stats) was or is intended to apply to a sanitary landfill. While it does not specifically mention sanitary landfills as such, the comprehensive statute of 1965, placing regulation of disposal sites and facilities under the jurisdiction of the Department of Public Health of Illinois (Ill Rev Stats, c 111½, §§ 471–476), is a further legislative recognition

of the fact that the character of the operation rather than its specific location delineates the guideline of public tolerability.

We cannot subscribe to defendants' theory that the composite reading of the various statutes now converts a statute (§ 27, c 100½), which was directed against "dumping garbage" within one mile of a city in which the garbage did not originate, to a combined statute which forbids "open" dumping of garbage anywhere (Ill Rev Stats, c 111½, § 461) and forbids a sanitary landfill within one mile of a city in which the landfill material did not originate.

Defendants argue that legislation introduced at the 1965 and 1967 sessions of the General Assembly to exempt sanitary landfills from the Illinois Nuisance Statute failed to pass and that there is thus a showing of legislative intent that sanitary landfills are within the prohibition of the nuisance statute and should be kept there. In re Estate of Miller, 35 Ill App2d 349, on 352, 182 NE2d 913, does attribute some significance to the fact that legislation, which would clearly have changed the law in reference to distribution of assets of an estate to heirs living in a communist dominated country, was tabled. It was said to strengthen the court's view that there was no existing legislation on the subject. In Ambassador East, Inc. v. City of Chicago, 399 Ill 359, 77 NE2d 803, a statute excluded "hotels" from a rent control regulation and the court held that the fact that the Senate Committee had reported against distinguishing transient hotels from residential hotels was strong evidence that failure to adopt an amendment making a distinction evidenced an intent to include hotels of all types in the exception. Plaintiffs, on the other hand, cite Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, to the effect that a failure to amend a statute is hardly conclusive of the intention of the legislature at the time of the adoption of the act. They also cite Order of Railway

Conductors v. Swan, 329 US 520, 91 L Ed 471, to the effect that where no hearings were held or reports made, the failure of Congress to amend a statute is without meaning for the purpose of statutory interpretation. We note that all three bills which were introduced were entitled, "For an act to amend Section 221a of 'An Act to revise the law in relation to criminal jurisprudence,'" which section was not in the Criminal Code at the time of introduction of the bills. Additionally, in the view taken of the original inapplicability of section 27 of chapter 100½ to sanitary landfills, the amendment would have been meaningless and should have failed to pass for that reason. It is also possible that the legislature felt that the subject was covered by the second paragraph of section 461, chapter 111½ above quoted.

Defendants cite Mills v. Village of Milan, 68 Ill App2d 63, 214 NE2d 915, as establishing that section 27, chapter 100½ applies to a sanitary landfill. The point before us was not discussed in the Milan case for the apparent reason that the joint contract between the Village of Milan and the City of Moline made section 27 inapplicable in any event. In County of Cook v. Triem Steel & Processing, Inc., 19 Ill App2d 126, 153 NE2d 277 (1958), the question of the applicability of section 27 to a sanitary landfill was not presented. In City of Chicago v. Fritz, 36 Ill App2d 457, 184 NE2d 713 (1962), no question of sanitary landfill was presented and the court found that the situation was sufficiently offensive to be labelled a common-law nuisance as well as a statutory nuisance. This site would also be prohibited today by the prohibition against open dumping contained in the 1963 statute (Ill Rev Stats, c 111½, § 461).

The evidence rather clearly shows that the sanitary landfill method of garbage and other waste disposal was not in common use in 1933 when what is now section 27 of chapter 100½ was originally enacted, and we believe the intention should properly be determined with

regard to general conditions at the time of enactment. Arnold v. City of Chicago, 387 Ill 532 on 540, 56 NE2d 795.

It is reasonable to conclude that section 27 of chapter 100½, Ill Rev Stats, in terms of history, was not designed to prevent a sanitary landfill, that at the present time the legislative recognition given to the sanitary landfill method of disposal takes it out of the category of a statutory nuisance so that it cannot be said that such nuisance section forbids the use of this property as a sanitary landfill.

Although there is weight in plaintiffs' argument that the adoption of the Act relating to refuse disposal sites and facilities, (c 111½, §§ 471–476, Ill Rev Stats) created an entirely new scheme covering the subject of refuse disposal and supplanted older legislation on the subject in accordance with the principle announced in Illinois Cent. R. Co. v. Franklin County, 387 Ill 301, 311, 56 NE2d 775, and other cases, it is not necessary to decide that point in this case. Neither is it necessary for us to decide whether section 27 of chapter 100½ is unconstitutional as making an arbitrary distinction between "local" and "foreign" garbage as contended by plaintiffs, although this position was apparently reached in Lutz v. Armour, 395 Pa 576, 151 A2d 108, 110, and Ex Parte Lyons, 27 Cal App2d 182, 80 P2d 745, 749.

We are brought to the question whether the provisions of the Cook County Zoning Ordinance forbidding the use of this particular property as a sanitary landfill for the disposal of waste including garbage are in that respect arbitrary and therefore unconstitutional and void.

The Supreme Court in Cities Service Oil Co. v. Lake County, 26 Ill2d 176 on 181, 186 NE2d 265, stated:

> "The principles governing zoning decisions are too well known to require extensive citation. That the ordinance is presumed to be valid, and that the burden is upon those seeking to assert its unconstitutional

aspect to establish the same by clear and convincing evidence is well settled. We have also repeatedly held that where the record presents evidence indicating a fairly debatable question as to the classification made or the action taken, the question must be resolved in favor of the determination of the zoning agency in the absence of a clear abuse of such power. First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213; Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396; County of Cook v. Glasstex Co., 16 Ill2d 72."

The court also has held that in restricting the use of property, the regulation must bear a genuine relation to the general welfare. In Lazarus v. Village of Northbrook, 31 Ill2d 146 at 151, 199 NE2d 797, at 801, the Supreme Court, in holding invalid the denial of a use for a hospital in an area which had a theatre, a liquor store, a motel and restaurant, two nursing homes, a night club and a tavern said:

"Nevertheless, the denial of a special use permit must bear a 'real and substantial relation to the public health, safety, morals or general welfare'. (Columbus Park Cong. v. Board of Appeals of Chicago, 25 Ill2d 65, 71.)"

The subject property is a compact tract of approximately 187 acres bounded on the south by Willow Road, on the north by Techny Road, on the east by West Fork of the North Branch of the Chicago River. The west boundary is formed by the Chicago and Northwestern Railroad which proceeds southwesterly from Techny Road and the Chicago, Milwaukee, St. Paul and Pacific Railroad which proceeds southeasterly from Techny Road. The railroads cross each other near the center of the west boundary. The property extends a little less than a half mile on Willow Road. The Techny Road boundary

on the north is much shorter than the south boundary. The north boundary of the property is about one-half mile south of the boundary of Northbrook and the south boundary of the property is approximately a mile north of the boundary of Glenview.

The plaintiffs own the property to the east, north and south of the subject property with two exceptions, and the adjoining property of plaintiffs is used for farming. About one-half mile to the east on Waukegan Road is a tavern. South of Willow Road just east of the railroad embankment is a tract zoned for manufacturing which is occupied by scattered residences, a pony farm, an antique shop and a swim club. The areas, except as noted, of the subject property and the property east and north and south are zoned R–2 and R–3, residential, and are devoted to farming. The area west of the railroads is zoned R–3 near the north, and M–1, manufacturing, on the west and southwest. Immediately south of Willow Road and slightly to the west of the subject property is the Glenview Naval Air Station. There is no present trend of development of the property except farming.

The subject property is below the grade of Willow Road, is subject to flooding and is presently worthless for residential purposes. Although the property is farmed at the present time, the ground level would have to be raised substantially to make it really suitable for farming.

Counsel are not in agreement on the interpretation of the Cook County Zoning Ordinance in reference to sanitary landfills. Plaintiffs' counsel argue that since landfills are a permitted use by special permit under the R–3 classification along with public utility and service uses and sewage treatment plants, the use could be permitted without change of classification. They argue that "landfill" is a permitted use in all zoning classifications. Defendants' counsel argue that it would be necessary to obtain a special use permit under an M–2 classification.

The words "sanitary landfill" are not used in the ordinance. The words used in the M–2 and M–3 categories are "areas for dumping of garbage refuse or trash." Plaintiffs in turn argue that the M–2 references to areas for dumping garbage mean "open" dumping of garbage which is now prohibited everywhere by Ill Rev Stats, c 111½, § 461. The trial court did not pass upon this issue as such, but held that the provisions of the ordinance insofar as they prevent reclaiming the plaintiffs' land by means of a sanitary landfill are arbitrary and void.

Since the granting of the permit to operate a landfill would not be a permanent use, and would not of itself affect the present R–3 Residential Classification, the issue is of little significance in this case.

The issue is whether the ordinance bears any real and substantial relation to the public health, safety or welfare when it denies permission to operate a sanitary landfill upon this property and there has been refusal of a special permit.

Initially, as to the issue of public safety, the questions of danger to aviation in respect to Glenview Naval Air Base, and traffic dangers created by garbage trucks were presented by witnesses.

Considerable testimony was elicited regarding the bird and sea gull problem from Dr. Clarence Faulkner, the Regional Director for the Division of Wild Life Services of the Department of Interior of the United States. He testified that there is no control program which can permanently prevent a sanitary landfill from being attractive to herring gulls, starlings and crows, and that they constitute a danger to aircraft. Plaintiffs presented Ward Duel, Health Director of the Village of Skokie and former Health Officer of Lake County, Illinois. He had observed twelve landfills in his experience. He testified that a properly operated landfill does not attract birds. The Zoning Board of Appeals, in its supplemental report, gave serious consideration to the sea gull problem as a

374

danger to aircraft in recommending denial of the landfill permit. The United States Government originally filed its representation of interest in this suit alleging a hazard to air operations at the Glenview Naval Air Station. However, on November 1, 1966, the United States Government withdrew its motion to intervene and its representation of interest. Since the only hazard to aviation alleged was that in respect to Glenview Naval Air Station, we may assume that this was the only known hazard, that the United States Government had investigated its interest in the matter and had withdrawn its representation of interest and that it is satisfied that there is no longer a serious issue.

In respect to traffic problems, Leo J. Wilkie, the head of the Traffic Engineering Division of the Cook County Highway Department testified that Willow Road, the planned access road, is elevated over the railroad and truck drivers leaving the site would be unable to see fast moving traffic from the west. He also said the four percent grade of the railroad bridge presented an ice problem. Plaintiffs presented Mr. Paul Box, a consulting traffic engineer with an impressive background of experience and national recognition who testified that the additional truck movements considering the time of day of such movements would be absolutely insignificant, and would have no effect whatsoever on the traffic capacity of the route. The witness based his conclusions as to traffic flow in part on a landfill site in the metropolitan area known as the Sexton Site. He also testified that the additional traffic from the operation would be substantially less than the traffic which would be generated by development of the property for residential purposes. The trial court's finding that traffic problems did not constitute a substantial justification for zoning restriction is not against the manifest weight of the evidence.

Extensive testimony was given by Dr. John R. Sheaffer, Resources Planning Officer of the Northeast Illinois

Planning Commission, the burden of which was that a floodplain makes the site unsuitable for garbage deposit because of the difficulty in controlling leachate with probable pollution of the water table and nearby streams. The plaintiffs presented Matthew Riddel, a sanitary engineer, who made studies of the site and developed a plan for the operation which made provision for sealing off seepage from the landfill operation and for treatment of water that might escape in the operation. Plaintiffs also presented Robert DeJonge, Registered Engineer and Chief Sanitary Engineer for the Cook County Health Department, who testified that he considered the plaintiffs' plans for sanitary landfill as consistent with the public health of the persons in the area.

In addition to engineering testimony regarding the health control problems in respect to the proposed sanitary landfill, the trial court admitted portions of the recommendations of the Cook County Zoning Board of Appeals under date of May 11, 1965, regarding applications of the plaintiffs to rezone the property described in the complaint. We think that testimony before the court by witnesses, subject to cross-examination, independently supported the trial court's findings, but portions of the report so succinctly summarize the situation that they provide clarity upon the proposition:

> "There is no escape from the refuse disposal problem, however, and it is a problem of critical importance. The Northeastern Illinois Metropolitan Area Planning Commission (referred to herein as the Planning Commission) an official advisory agency and one whose views are entitled to substantial weight, published in June, 1963, its Technical Report No. 3 on Refuse Disposal Needs. Surveying the six counties of Northeastern Illinois, the Commission Study reported that

" 'on the basis of current population projections it is estimated that 150 million cubic yards of refuse will have to be collected by 1970. Existing incinerators could burn approximately one third of this amount leaving a balance of 105 million cubic yards of refuse that must be accommodated at disposal sites. This volume of refuse would cover an area of 50 square miles to a depth of 2 feet.'

"Much of the opposition to the present applications is based upon the conviction that it is simply not possible to conduct a sanitary landfill in a nuisance free unobjectionable manner. Thus in the petitions objecting to the granting of the applications reference is made to 'unbearable stench,' 'rodents,' 'squirrels, dogs, cats and rabbits,' 'stream pollution' and 'hazardous traffic,' chargeable against 'garbage trucks.' But these objectionable features are simply not part of a modern, scientific and well operated landfill.

"The evidence before the Board on these applications, the evidence in the earlier River Road Sanitary Land Fill application, publications of the United States Public Health Service, the American Public Works Association and many other agencies establish that a modern sanitary landfill operated in accordance with up to date procedures and control measures can be a nuisance free method of dealing with the critical problem of refuse disposal. As put by the United States Public Health Service in a recent bulletin: 'Sanitary land filling is a method of disposing of garbage, rubbish and ashes on land without nuisance, fire or public health hazard.' This fact of life, so hard for those with vivid olfactory memories of open garbage dumps to believe, has been accepted by the Illinois State Legislature for

a 1964 amendment to the Illinois Public Health Statute (Ch 111½, Sec 461–463) prohibiting open dumps expressly accepts the operation of 'sanitary land fills.' *This Board accepts as an established fact that sanitary land fill can be nuisance free. . . .* (Emphasis supplied.)

"It is desirable, though not essential, that a landfill operation as a limited period type of light industrial activity be situated away from developed residential areas. The subject property is strategically situated on that score. To the northwest and southwest there are railroad rights of way to serve as barriers protecting adjoining property, zoned M–1. To the east of the property is undeveloped and is owned by the applicants. To the north are some residences but they lie to the west and are protected by a high embankment. To the south are commercial and recreational establishments on land zoned M–1 lying on the eastern side of the property to the south. As stated by the Committee on Facilities Planning of the North Suburban Council on Refuse Disposal, 'the site is relatively remote from concentration of residence, has reasonable access from public roads, is conveniently located for use of our member municipalities, and the Committee believes it is well adapted for the proposed use. . . .

"The objection was repeatedly made at the hearings that there is no public machinery presently provided in the way of state legislation to insure that high operating standards laid down in private agreements will in fact be maintained. To this objection two answers can be made. In the first place the evidence is persuasive that applicant's licensee is experienced and successful in conducting a modern well operated sanitary landfill near Riverwood. In the second place, this Board has the authority to recommend that the granting of a special use be made

378

subject to 'conditions and guarantees' deemed necessary to protect the public interest. (Cook County Zoning Ordinance, Article VI, Section 6.9(e).) Thus, the 'Rules' of the License Agreement can become 'public law' through the medium of being incorporated as special conditions on the operation of the special use. Should a sanitary landfill degenerate into a 'dump' with its attendant nuisance, it would be shut down by the public authority."

■ Although the findings of the Cook County Zoning Board of Appeals were independently supported by testimony of witnesses before the trial court, counsel for defendants contend that the trial court erroneously admitted the record of these findings and erroneously considered them in arriving at his decision. We think on the contrary that the Cook County Zoning Board of Appeals is an official fact finding body and when, as here, after extensive hearings and careful consideration the Board makes specific findings a trial court, though not bound by the findings in this case, is entitled to give proper weight to them. We think there is ample precedent for this recognition. In Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797, 800 and 801, which was an attack upon a zoning ordinance by independent suit, the Supreme Court took note of the findings of the Plan Commission of the Village of Northbrook as concurred in by the trial court. In Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529, which was an attack upon a zoning ordinance by independent suit, the court took note of the Plan Commission's recommendation of the proposed use. In Lancaster Development, Ltd. v. River Forest, 84 Ill App2d 395, 228 NE2d 526 on 529, an independent action to compel issuance of a building permit, the court took note of the concurrence of the trial court in the recommendation of the Zoning Board. While it is true that certain legislative determinations in re-

spect to zoning do not afford any evidentiary material for a court in an independent proceeding, nevertheless, where an official board has made specific findings, which are subject to support or contradiction, we think the fact that such specific findings have been made by an official body may be properly considered by the court. The weight to be given in each case may depend upon proven or upon generally accepted facts. The fact that the Illinois Legislature has recognized that sanitary landfills may be nuisance free is entitled to great weight.

The ultimate recommendation of the Zoning Board of Appeals of Cook County was "that the application be denied at this time." The two reasons assigned were the present adequacy of disposal facilities in the area, and the dangers to aircraft at Glenview Naval Air Base. The latter reason was based upon an objection of the United States Government which has been withdrawn since this finding was made.

■ ■ While it is perhaps too extreme to say that policy questions as to an appropriate "time" when facilities which are otherwise unobjectionable may be used are entirely outside the scope of zoning authorities' power, nevertheless, we feel that to justify such an exercise of power conditions must be shown, such as the existence of conflicting plans or programs. We think it is beyond the power of zoning authorities to deny a legitimate use solely on the ground that other sites are available where such use may be made.

■ We think that the physical situation as outlined with reference to the distance of the property from other residential property, the existence of natural protective barriers which the evidence bears out and which were noted by the Zoning Board of Appeals amply justify the trial court in finding that the proposed use would not adversely affect the use or value of properties in the immediate vicinity and the general surrounding areas. The problems of flying paper and unsightly ex-

posure of garbage and paper are problems of operation which are properly the subject of the regulatory authorities in existence and do not militate against the granting of the zoning permit. These are not reasons given by the zoning authorities for denying the permit.

Counsel for defendants complain of the ruling of the trial court in refusing to allow impeachment of the witness, DeJonge, by prior inconsistent statement as to the birds seen by him on visiting landfill sites and that the proposed leachate treatment would have no effect upon chemical wastes. Plaintiffs' counsel contend no proper foundation was laid for the impeachment. Objection is also made by defendants' counsel to admission of a purported staff letter of the Northeast Illinois Planning Commission, the copy of which had certain matter with reference to the Commission's approval of the site, which did not appear in the original letter. The purpose of plaintiffs' counsel apparently was to show that Dr. Schaeffer, who now opposes the proposed site, once participated in a report which is alleged to have favored it. Our view of the controlling issues, and the trial court's views on these issues, makes the rulings on these specific objections immaterial.

Counsel for defendants state that there is no evidence that the zoning restriction is a crucial factor in diminishing the value of plaintiffs' land. There is testimony that the value of the land is $46,500 for farming, and that if divided into one-half acre lots it would have a value of three and one-half million dollars. Defendants' counsel say it clearly appears that it is the topographical nature of the land and not the restriction of zoning which affects the value of the property. While the difference in value caused by a restriction is sometimes a vital factor in a decision as to the validity of a zoning regulation, it is not a necessary part of an attack upon a regulation that it be shown to diminish the value of the property and conversely, if the regulation is reasonable, the dimi-

nution of value will not in and of itself make the regulation invalid. Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188, 191.

The true test is whether the zoning regulation bears some real substantial relation to public health, safety or welfare. Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797, 801, and LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, on 46, 145 NE2d 65.

The injunctive portion of the judgment is drafted in a manner to fully protect the public from present and future nuisance which might arise from an improper operation of the proposed sanitary landfill use. The trial court reserved jurisdiction to enforce compliance with the plans for construction and maintenance of the landfill.

The judgment of the Circuit Court is affirmed and the cause is remanded for the exercise of the court's retained jurisdiction.

Affirmed and remanded.

SMITH and CRAVEN, JJ., concur.