COPLEY MEMORIAL HOSPITAL, INC., Plaintiff-Appellant, *v.* THE CITY OF AURORA, Defendant-Appellee.—(ELSIE M. LEE *et al.*, Intervening Defendants-Appellees.)

Second District    No. 80-787

Opinion filed August 17, 1981.

Sam Alschuler and Paul A. Lewis, both of Alschuler, Putnam, McWethy, Funkey & Grometer, of Aurora, for appellant.

Jerry R. Reed, City Attorney, J. Robert Murphy, and G. William Richards, all of Aurora, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

In June 1979, Copley Memorial Hospital (Hospital) petitioned the City of Aurora (City) for a special-use permit to develop a parking lot on the subject property, consisting of eight contiguous parcels on the west side of Lincoln Avenue in Aurora. The hospital, located across the street on the east side of Lincoln Avenue, had either bought or obtained options on the parcels in 1978 and 1979. After conducting a study of the area and holding a public hearing on the matter, the Aurora Planning Commission recommended denial of the petition. The Aurora City Council reviewed the recommendation of the commission and denied the petition. Thereupon, the Hospital brought this action for a declaratory judgment that the actions of the City in denying the Hospital's petition and the zoning ordinances themselves, as applied to the Hospital property, be declared null and void as arbitrary, capricious and unreasonable and, therefore, unconstitutional. The court allowed neighbors whose property adjoined and abutted the subject property to intervene.

The trial court, sitting without a jury, heard evidence from the Hospital president, a Hospital architect-planner and an area real estate appraiser. A land use map of the immediate area, prepared by the City, was introduced, and, in conjunction with testimony relating thereto, disclosed that the hospital complex composes 30% of the area. With the exception of the elementary school across the street south of the hospital, this area is almost exclusively residential, primarily single-family dwel-

lings 50-80 years old. The plaintiff's witnesses testified as to the immediate need for additional parking to serve the Hospital because of the increase in population and nature of services offered by the Hospital, insisting that the subject property is uniquely suitable for the parking lot necessary to meet the immediate needs of the Hospital and the proposed development of the physicians' offices in the former nursing education building. They also testified that their plan includes a fence or architectural screen along the west and north perimeter along with trees and shrubs and conforms to the construction and design standards and specifications set forth in the city ordinances, that the proposed use is compatible with the present character of the neighborhood in that an orderly parking lot would be an improvement over the residents' current practice of parking cars in the alley behind their houses or on grassy areas of their property, that the proposed parking lot would have a positive effect on current traffic and pedestrian patterns and not impact negatively on safety in the neighborhood, that the subject property is available for immediate development and that, except for the removal of the single-family residences currently on the subject property, the parking lot as designed would not harm the area but would indirectly benefit it by providing a direct benefit to the efficiency of services rendered by the Hospital.

On cross-examination of the plaintiff's witnesses, counsel for the City and counsel for the intervenors elicited the following evidence: (1) the Hospital president's opinion that the subject property would be ideal for additional parking spaces, mainly to accommodate increased demand resulting from conversion of the old nursing education facilities into physicians' offices, was based on the lack of any other alternative; (2) the Hospital board purchased a parcel with a single-family home on the west side of Lincoln Avenue as a "buffer to the remainder of the property on the west side of Lincoln Avenue and [it] would not be turned into parking"; (3) the Hospital purchased the property knowing that it was zoned residential, and the City did not say the property would be rezoned or a parking permit granted; (4) the City staff indicated to the Hospital that the City felt parking requirements could be supplied east of Lincoln Avenue entirely, though the Hospital disagreed; (5) the parking lot in question was part of a larger recommendation for a solution to parking needs for a planned expansion of the 319-bed hospital to 500 beds, which included development of additional parking east of Lincoln Avenue to add about 600 more spaces; (6) the parking lot would be used 24 hours a day; (7) it is possible that a purchaser of property next to a parking lot would feel he could get a bargain or an owner of such a property would price it lower because of the parking lot next to it; and (8) construction of the parking lot would change the character of the neighborhood.

At the close of the plaintiff's evidence, the defendant City moved for

a dismissal, and the intervening defendants joined in that motion. After argument of counsel, the trial court found that the plaintiff Hospital failed to present evidence to overcome the presumptive validity of the zoning decision of the City and, accordingly, dismissed the complaint with prejudice. This appeal followed.

■■ The Hospital initially argued on appeal that the trial court erred in granting the defendant City's motion to dismiss because the Hospital had made out a *prima facie* case and that, under the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510), the dismissal was therefore improper. The *Pedrick* standard, which requires the court to find after viewing all the evidence in its aspect most favorable to the opponent that the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand, is applied to motions for a directed verdict in jury cases. The issue in this nonjury case, properly formulated, is whether the trial court's order granting the defendant City's motion to dismiss at the close of the plaintiff Hospital's evidence was contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58; *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 228, *aff'd* (1980), 81 Ill. 2d 151.

■■■ It is permissible to question the decision to deny the special-use permit without attacking the underlying zoning classification, and the same standard of review of the legislative determination is applicable. (*La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 15.) As the trial judge stated in ruling on the motion, a presumption exists in favor of the validity of the zoning classification or action taken. (*Cities Service Oil Co. v. Lake County* (1962), 26 Ill. 2d 176, 181; *Society of the Divine Word v. County of Cook* (1969), 107 Ill. App. 2d 363, 372.) The burden of proof is on the plaintiff to prove by clear and convincing evidence that the zoning decision was arbitrary, capricious and unreasonable in that it bore no real or substantial relationship to the public health, safety, morals or general welfare. *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 17.

Both parties cite six factors to be considered in determining the validity of a zoning ordinance, summarized in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned con-

sidered in the context of land development in the area in the vicinity of the subject property. The Hospital has admitted at trial and in its brief on appeal that the existing use of the property for single-family residences in this area, which is almost exclusively residential other than for the plaintiff Hospital and a school, is reasonable. But, they argue, the property is uniquely suitable for the parking lot they desire, the proposed use will not diminish property values, denial of the special-use permit imposes a tremendous hardship on the Hospital and the denial is contrary to the public good because it seriously limits the Hospital's ability to provide medical service. It is the Hospital's position, therefore, that the City improperly denied the petition for a special-use permit for nonresidential parking in a residential zoning district.

We disagree.

■■■ The granting of a special-use permit is a discretionary function of a legislative body, which considers the circumstances of a particular case and independently determines whether the particular use in the proposed location is designed in such a way as to be compatible with the surrounding area. (*La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 17.) The ordinance in question in the instant case appears to contemplate that the legislative body is to weigh the desirability of the proposed use against its potential adverse impact. (*Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 187.) The legislative decision is reviewable (*La Salle National Bank v. County of Lake*, at 15); even though no precise standards to govern its determination are necessary (*Kotrich*, at 187; *La Salle National Bank v. County of Lake*, at 15), the action must not be arbitrary or capricious (*Cities Service Oil Co. v. Lake County* (1962), 26 Ill. 2d 176, 183). The Hospital has failed to show that the City's decision to deny the permit was arbitrary and capricious.

■■ It is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to public health, safety and morals. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) Where there is room for a legitimate difference of opinion concerning reasonableness of an ordinance governing the use of private property or where such question of reasonableness is fairly debateable, the courts will not interfere with the legislative judgment (*Trust Co. v. City of Chicago* (1951), 408 Ill. 91, 98-99) absent clear abuse of such power. *Society of the Divine Word v. County of Cook* (1969), 107 Ill. App. 2d 363, 372.

■■ In this case, the municipal body denied the Hospital's petition for a special-use permit, and, as the trial judge observed, the Hospital failed to

sustain its burden of proof that the City's decision was unreasonable in light of the facts of this particular case. This case can be distinguished on its facts from cases where the municipality's denial of the requested zoning action was reversed: unlike the situation in *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 17, a question existed here as to compatability with the surrounding area; unlike the situation in *Loves Park v. Woodward Governor Co.* (1958), 14 Ill. 2d 623, this is not an area with a high proportion of industrial zoning and uses where other parking lots similar to that proposed by the plaintiff had been allowed (see also *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 152); unlike the facts in *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 87, there is no heterogeneity of uses in the surrounding area. Even if the Hospital did comply with all standards required for a special-use permit, the denial was not necessarily arbitrary or unreasonable. (*La Salle National Bank v. County of Lake*, at 16-17.) The hardship in this case was, to some extent, self imposed because the Hospital bought the property knowing the restrictions, had no assurances from the City that the proposed use would be permitted and had indications that the City felt it was unnecessary. See *Cities Service Oil Co. v. Lake County* (1962), 26 Ill. 2d 176, 181.

It may be that the Hospital is correct in its vigorous assertion that the highest and best use of the subject property is as a parking lot. Although the highest and best use is one consideration of a court, generally no single factor is controlling. *Ritter v. Village of Morton Grove* (1979), 70 Ill. App. 3d 640, 646.

In this case, the trial judge considered the particular facts and circumstances and determined that the Hospital failed to sustain its burden of proof, thereby failing to overcome the presumption of validity of the ordinance and the zoning decision pursuant thereto. Even though the proofs were elicited by only one side, the trial judge, in this nonjury case, exercised the authority he had pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 64(3)) to weigh the evidence adduced and to enter a judgment in the City's favor. As the Illinois Supreme Court stated in upholding the zoning decisions of the municipality in *Cities Service Oil Co. v. Lake County* (1962), 26 Ill. 2d 176, 183:

"Suffice it to say that we cannot conclude that the testimony here shows * * * arbitrary or capricious action on the part of the zoning bodies * * *. The legislative bodies charged with responsibility for granting or denying zoning changes has considered this problem and denied * * * the petition for change. This action, in turn, has been sustained by the trial judge who saw and heard the witnesses. There is nothing in the record which would compel us to

substitute our judgment for that of the legislative body whose action has been sustained by the trial court."

The determination made by the trial judge in the instant case affirming the zoning actions of the municipality was not contrary to the manifest weight of the evidence, and we will not disturb it on appeal.

For the foregoing reasons, we affirm the judgment of the circuit court for the Sixteenth Judicial Circuit, Kane County, Illinois.

Affirmed.

HOPF, J., concurs.

Mr. JUSTICE UNVERZAGT, dissenting:

I respectfully dissent. The trial court having heard the plaintiff's evidence ruled that the proof failed to overcome the presumption of the validity of the ordinance in question and granted defendant's motion for a directed verdict. I believe the trial court erred and should have denied the motion, and if the City did not elicit proofs on its side of the case, the trial court should have granted the hospital the relief it sought.

This hospital was constructed in 1888 and has grown and developed with the community fulfilling a large measure of its health care needs. Presently it operates a number of combined buildings providing all of the modern health care components and delivery systems. Its licensed capacity is 319 beds of which 265 are active. It employs 950 persons on three shifts. Its medical staff consists of 135 doctors of whom 12 practice in close proximity to the hospital buildings. The hospital presently provides 500 parking spaces. Most of the present parking is limited to the east side of the present building; some is located north on Weston Avenue. Like all modern hospitals, this one has long-range future plans, one of which is to increase to 500 beds within a 10-year period. Presently and for a foreseeable future, there will be a trend to more out-patient services as contrasted to in-patient services.

The hospital seeks to attract doctors to its facilities and to provide rental space to them. This permits maximum efficiency for staff doctors and assures the hospital the greatest use of its facilities. Anyone familiar with the costs and maintenance expense of a modern hospital readily will concede the positive good achieved by maximum utilization of these sophisticated and expensive facilities.

When the hospital transferred its nursing program to Aurora College in October of 1978, space it owned became available in former nursing student quarters. It was decided to make this space available for rental by practicing physicians for offices. However, patients have to be able to get

to their doctors' offices and most get there by automobile. Ergo, additional parking space had to be available to service these medical offices which are an integral part of the hospital complex.

The hospital acquired eight lots located on the west side of Lincoln Avenue, directly across the street from the hospital. These lots were improved with dwellings 50 to 80 years old which are to be removed. The plan is to create a parking lot with 146 to 150 spaces. The plan for the parking lot meets the City's requirements as to design. The modern techniques for landscape screening with shrubs and ornamental trees and subdued lighting have been provided for by the planner.

The president of the hospital testified as to the need for the additional parking. The landscape planner described the improvements to be installed. A real estate appraisal expert testified that the proposed use would have no detrimental effect on property values to the lots across the alley facing La Salle Street.

Special use provisions in ordinances have had a long history of acceptability. (*Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181.) The technique was developed as a means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential, commercial and industrial zones.

One thing is clear, the denial of a special use permit must bear a " 'real and substantial relation to the public health, safety, morals or general welfare.' " *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 151-52.

In my view, the proofs offered by the hospital showed that the denial of the special use permit was arbitrary and unreasonable. The permit should have been granted. *Society of the Divine Word v. County of Cook* (1969), 107 Ill. App. 2d 363.