AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF SKOKIE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—87—2532

Opinion filed March 23, 1989.

Raymond F. Simon and Joseph A. Spitalli, both of Chicago (Simon & Spitalli, James T. Murray, and Witwer, Moran, Burlage & Witwer, of counsel), for appellants.

Barbara M. Meyer, Corporation Counsel, of Skokie (Jeffrey D. Greenspan, Assistant Corporation Counsel, of counsel), for appellee Village of Skokie.

Don E. Glickman and Thomas F. Geselbracht, both of Rudnick & Wolfe, of Chicago, for appellees La Salle National Bank, American National Bank and Trust Company of Chicago, Mark Goodman & Associates, and Harms/Old Orchard Venture.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, American National Bank and Trust Company of Chicago, as trustee under trust No. 62889, and Quartet Manufacturing Company, appeal from the judgment of the circuit court of Cook County finding that defendant, the Village of Skokie, complied with the standards set forth in its zoning ordinance (Skokie, Ill., Village of Skokie Official Zoning Ordinance §10.5 et seq. (1981)). Other defendants in this appeal are La Salle National Bank, as trustee under trust No. 102223, American National Bank of Chicago, as trustee under trust No. 62111, Mark Goodman & Associates, and Harms/Old Orchard Venture. The following issues are raised on appeal: (1) whether the Skokie Village Board of Trustees had the authority to grant the petition for site plan approval; (2) whether proper procedures were followed for the granting of modifications from the requisites of the "Office Research District"; and (3) whether the trial court's judgment was contrary to the manifest weight of the evidence.

We affirm.

In 1985, Mark Goodman & Associates (hereinafter Goodman) applied to the Village of Skokie (hereinafter the Village) for site plan approval under the special use provisions of the Village's zoning ordinance (Skokie, Ill., Village of Skokie Official Zoning Ordinance §10.5 et seq. (1981)) (hereinafter zoning ordinance or ordinance). The special use provisions of said ordinance provide:

"ARTICLE 13—ADMINISTRATION AND ENFORCEMENT

13.4.5.5 Decisions and recommendations of the Plan Commission.

A special use permit for any of the special uses contained in this ordinance may be granted and the applicable district regulations modified only if the evidence in the judgment of the

Plan Commission sustains each of the following findings of fact with a minimum of five (5) concurring votes required:

13.4.5.5.1 The establishment, maintenance or operation of the special use will not be detrimental to or endanger the public health, safety, morals or general welfare; and the proposed building(s) or use at the particular location is necessary or desirable to provide a service or a facility which is in the public interest and will contribute to the general welfare of the neighborhood or community.

13.4.5.5.2 The proposed building or use will not substantially change the character of the neighborhood, will not have an undue adverse effect upon adjacent property or property values in the neighborhood, will not unduly aggravate traffic conditions, and will not unduly burden essential public services such as drainage facilities, public utilities and those services pertaining to public health, public safety and public welfare in general.

13.4.5.5.3 The proposed building(s) or use will be designed, arranged and operated so as to permit the development and use of neighboring property in accordance with the applicable district regulations.

13.4.5.5.4 The proposed use will not alter or be contrary to the primary purpose of the zoning district or area in which it is proposed, when its effect is considered in conjunction with the cumulative effect of the number of various special uses of all types already in the adjacent area and in the Village as a whole.

13.4.5.5.5 The proposed use and its plan conforms with the general intent of the Official Comprehensive Plan." (Skokie, Ill., Village of Skokie Official Zoning Ordinance §13.4.5.5 *et seq.* (1981).)

Defendant sought approval of a proposed five-story office building (hereinafter Harmswood building) located in the Village at the northeast corner of Harms Road and Old Orchard Road. The property on which the Harmswood building will be located is in the Village's "Office Research District" (hereinafter OR District), a zoning district created under the zoning ordinance. The OR District is unique because of the properties located within the district. For this reason, all properties within the district require site plan approval under the special use provisions of the Village's zoning ordinances. The OR District extends from the Edens Expressway on the east to Harms Road on the west and from Old Orchard Road on the north to Golf Road on the south.

It contains six different office buildings and the courthouse.

On or about July 15, 1985, the Village's Plan Commission (hereinafter the Commission) voted unanimously to deny Goodman's request for site plan approval. Goodman presented to the Commission an alternative proposal for approval. After a hearing thereon, the Commission again voted to deny site plan approval. Despite the negative recommendation by the Commission, the Village Board of Trustees (hereinafter the Board) passed an ordinance approving the proposed site plan. In accordance with the zoning ordinance, the Board made the following findings:

> "The subject use and its site plan meets the intent of the O-R Research District by retaining large areas of existing, mature landscaping, which is *** consistent with the adjacent Cook County Forest Preserve. *** The proposed building will not have any adverse effect on the public health, safety, morals, or general welfare of the community.
>
> * * *
>
> *** New developments along Old Orchard Road are creating a unified character of office/research facilities which are compatible with adjacent parks, open space, and single-family houses. *** The open character of the site plan will help maintain the values of adjacent property while unifying the character of Old Orchard Road from the Edens Expressway west to Harms Road.
>
> * * *
>
> When constructed and operated in compliance with the Petitioners' proposed Site Plan, the subject building will not adversely effect [sic] the use or development of neighboring property in accordance with applicable district regulations. ***
>
> * * *
>
> *** The subject office use is encouraged by the Zoning Ordinance. *** The site plan has been arranged in a manner which will mitigate any adverse impact from the granted relief. There will also be no cumulative adverse impact when the various special uses of all types already in the adjacent area and Village are considered as a whole."

The Harmswood building, as approved by the Village, will be a curvilinear five-story office building oriented towards the Cook County Forest Preserve to the south and west. Parking will be at grade and below grade in a parking basement. It will be approximately 230 feet away from the nearest single-family home to the north and 136 feet from the four-story Quartet office building to the east.

After hearing extensive evidence from all parties, the trial court upheld the findings of the Board. This appeal followed.

■ Plaintiffs' initial contention is that the Board did not have the authority to grant the petition for site plan approval. Plaintiffs argue that, under the special use provisions of the zoning ordinance, the Board was prohibited from granting site plan approval after the Commission's negative recommendation.

Section 13.4.5.7.2 of the zoning ordinance expressly states that the Board shall determine whether to issue special use permits:

"The Mayor and Board of Trustees may grant or deny any applications for a special use permit after receiving the recommendations of the Plan Commission, including the stipulation of additional conditions and guarantees, when they are deemed necessary for the protection of the public interest." (Skokie, Ill., Village of Skokie Official Zoning Ordinance §13.4.5.7.2 (1981).)

In section 4.2.153 of the zoning ordinance, the Board's authority to grant or deny special use permits is again stated:

"After due consideration in each case by the President and Board of Trustees of the Village of Skokie after receiving the report and recommendation of the Plan Commission relative to the impact of such use upon neighboring land, and of the public need for the particular use at the particular location, such 'special use' may or may not be granted by the President and the Board of Trustees." (Skokie, Ill., Village of Skokie Official Zoning Ordinance §4.2.153 (1981).)

Although the above two provisions unequivocally indicate that the Board has the express power to grant or deny a special use permit, plaintiffs insist that the Board withdraw its power if the Commission did not issue a positive recommendation.

Plaintiffs' suggestion that the Commission has the power to decide to deny a special use permit by making negative findings of fact is without merit. Provisions 13.4.5.7.2 and 4.2.153 of the zoning ordinance clearly demonstrate that the Board, not the Commission, is the body that determines whether to grant or deny site plan approval. If the Board lacked authority to issue a special use permit based on the negative recommendation of the Commission, there would be no logical purpose for requiring the Commission to submit its findings of fact on applications receiving a negative recommendation. The ordinance specifically states that "the Plan Commission shall have the following powers and duties: To prepare and recommend to the Mayor and Board of Trustees ***." Skokie, Ill., Village of Skokie Official Zoning

Ordinance §§13.4.2, 13.4.2.1 (1981).

In *Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, the court was presented with a similar issue. There, as in the instant case, plaintiffs were property owners who challenged the validity of an ordinance which allowed development on neighboring property. The ordinance required the zoning board of appeals to make specific findings of fact before recommending variations. Plaintiffs alleged that the zoning board did not make proper findings of fact prior to the enactment of the ordinance. However, the court disagreed and ruled in favor of the defendants, stating the following:

> "Reports or findings of an administrative body, even when required by statute, are merely advisory and do not affect the authority of the City Council where the latter has the final decision-making authority. [Citations.] Here the authority to grant variations is expressly reserved to the City Council. Therefore, the alleged failure by the Zoning Board to make findings of fact or any asserted deficiency regarding such findings does not invalidate the legislative action taken thereon by the City Council." *Kleidon*, 120 Ill. App. 3d 1049-50.

Plaintiffs' reliance on *Geneva Residential Association, Ltd. v. City of Geneva* (1979), 77 Ill. App. 3d 744, is misplaced. In *Geneva* the plan commission recommended to the city council to grant defendant a special use permit. However, its findings were not consistent with Geneva's zoning ordinance. In its instructions to the trial court on remand, the court stated: "[I]f the court determines that the plan commission failed to make a required finding, but the evidence shows that the city council reassessed the record and on its own investigation made the required finding, then the ordinance granting the special use should be upheld." *Geneva Residential Association, Ltd.*, 77 Ill. App. 3d at 759.

As is evident in the record, the Board reassessed the proposal for site plan approval and made its own findings, which are clearly set forth in the ordinance approving the site plan. Thus, recommendations by the Commission are only advisory, and the final authority to grant or deny site plan approval is vested in the Board.

■ Plaintiffs next contend that the Board granted variances from the requirements of the OR District that were contrary to the zoning ordinance. The zoning ordinance contains minimum and maximum standards for developments in the OR District. Specifically, the Board permitted the Harmswood building to have some parking spaces that will be 8½ feet wide, although the ordinance requires parking spaces to be nine feet wide. Contrary to the standard, the Board further per-

mitted parking on the east side of the yard. Plaintiffs argue that the zoning board of appeals, not defendant Board, has the authority to grant or deny variances and that the ordinance provides no guidelines for the Board to make such a determination.

It is undisputed that the Harmswood building requires modifications from the standards set forth in the OR District. Pursuant to the ordinance, "the Zoning Board of Appeals shall have no authority to grant a variation from the provisions or conditions of this District. Modifications to any of the requisites of this District may be recommended by the Plan Commission for consideration by the Board of Trustees." (Skokie, Ill., Village of Skokie Zoning Ordinance §10.5 (1981).) Notwithstanding plaintiffs' claim that a variance was granted, we must agree with the trial court that the legislative intent is to draw a distinction between a "modification" and a "variation." Modifications are what the Board granted in the instant case. Provision 10.5 of the zoning ordinance allows the Board to make modifications if the petitioner provides persuasive evidence that modifications are necessary and desirable. Thus, contrary to plaintiffs' assertion, the ordinance does provide a standard for the Board to determine whether to grant modifications.

Plaintiffs cite *Welton v. Hamilton* (1931), 344 Ill. 82, to support their contentions. In *Welton*, plaintiff challenged the constitutionality of section 3 of the Illinois Zoning Act (1923 Laws of Illinois 268). Section 3 granted the city council authority to establish a zoning board of appeals which could determine and vary the application of zoning regulations without restriction. The court found this delegation of authority to be "arbitrary and unconstitutional because it is a delegation to an administrative body of the power of legislation, which can be exercised only by a legislative body." (*Welton*, 344 Ill. at 95.) *Welton*, thus, is irrelevant to the present case.

Unlike *Welton*, here the Board has not attempted to delegate its legislative authority. Rather, it has expressly reserved its legislative duties by vesting in itself the final authority to determine whether a modification is necessary and desirable. Furthermore, Skokie is a home rule unit; therefore, it has the power to set its own zoning standards. (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 569.) We find, therefore, that proper procedures were followed in granting modifications to the requisites of the OR District.

Plaintiffs' final contention is that the trial court's judgment was contrary to the manifest weight of the evidence. Plaintiffs argue that the testimony at trial clearly demonstrated that the Harmswood build-

ing did not meet the requisites of the zoning ordinance for the OR District.

■ The standard of review of zoning issues is that the "trial court's findings of fact will not be overturned unless they are against the manifest weight of the evidence." (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318.) Under Illinois law, a zoning ordinance is presumed valid. (*Cosmopolitan National Bank,* 103 Ill. 2d at 310.) "The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare." (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) Where "the reasonableness of the ordinance is fairly debatable, the decision of the municipal authorities must be upheld, and the trial court is not justified in substituting its judgment for that of the municipal authorities." *Schmidt v. City of Berwyn* (1985), 134 Ill. App. 3d 36, 46.

■ Special uses are also entitled to a presumption of validity. This presumption is rebuttable only by clear and convincing evidence that the grant of special use will result in real or substantial harm to the public health, safety and welfare. *York v. Village of Wilmette* (1986), 148 Ill. App. 3d 108, 115.

■ In applying the above standards to the present case, we agree with the trial court that plaintiffs failed to establish that site plan approval did not comply with the requirements of the OR District. The trial court heard testimony from five land planners, two appraisers, an architect, a traffic engineer and various lay witnesses. Plaintiffs' witnesses all argued that the Harmswood building did not meet the special use criteria because of its height and modifications to the parking requirements of the OR District, as discussed previously.

Peter Peyer, a land planner, testified that buildings of various heights occur throughout the OR District without adverse consequences. The district contains six different office buildings and a courthouse. The buildings are the 12-story Lincoln Properties/Bell & Howell building; the one-story Miller Joseph building; the two tower seven-story MRX/Searle buildings; the five- and six-story Brunswich buildings; the two- and three-story Portland Cement buildings; and the four-story Quartet building. The courthouse is two stories with an atrium approximately 58 feet in height. Peyer testified that the single-family neighborhood to the north would not be adversely affected by the height of the Harmswood building. Peyer came to this conclusion based on the distance from the residential property and fact that

the setbacks are adequate to reduce the scale of the building. The expert testimony of Allen L. Kracower, an urban planner and zoning consultant, and Neil King, a real estate broker, appraiser and counselor, was consistent with Peyer's testimony.

Based on the testimony, the trial court stated:

"In the Court's opinion, the plaintiff failed to show by credible evidence based upon the high standard that is required here that the approval was unreasonable or arbitrary. The Court finds that the evidence showed the impact of an extra story to be insubstantial [f]or the following reasons; there is no evidence of restriction of light or air by this five-story building upon the four-story building adjoining it. As a matter of fact, the ordinance only requires a 50 foot side yard setback. This building has 86 feet between it and the plaintiff's [property line]. The view of the five-story building immediately to the west of plaintiff's building *** is obstructed as far as looking at the forest preserve or anything beyond to the west or to some degree perhaps to the southwest. But the same thing would be true of the four-story building. The height impact on the users of the recreational park in the Court's opinion is insubstantial. [One] hundred and sixty-one feet is what the ordinance required the building to be away from the northern border. [One] hundred eighty-one feet is what is proposed *** in my opinion the evidence shows [it is] not detrimental to the residential users of that park."

We agree with the rationale and conclusion rendered by the trial court.

Regarding the modification to the requisites for parking, Peyer testified that practically each building, including the Quartet building, in the OR District had received some parking modifications to permit parking in both its front and rear yards. Kracower testified that parking yards are one of the most common modifications and are not problematic. King further noted that it was common practice to locate one parking lot adjacent to another without any adverse impact. He could not find any negative impact that would result from parking in the east side yard of the Harmswood building.

The trial court properly rejected the contentions of Quartet that the parking modifications to the east side yard were arbitrarily and capriciously granted. We must again agree with the trial court's rationale that according to the plan the parking modification was placed in the least obtrusive location possible, next to a similar use of parking spaces. Furthermore, the record reveals the modification does not

adversely affect the residents or park users to the north. The visitors and tenants of the Quartet building, when looking to the west, would first observe their own parking spaces and cars before observing those of the Harmswood building. Based on the foregoing, plaintiffs have failed to establish by clear and convincing evidence that the trial court incorrectly concluded that the Harmswood building met the criteria for site plan approval.

Additionally, Quartet's contention that the surrounding single-family homes and its property will be diminished in value is also not supported in the record. Francis S. Lorenz, a real estate appraiser retained by plaintiffs, failed to cite specific homes that would be affected by the Harmswood building. He was also unable to state in what dollar amounts any of these homes or the Quartet building would be diminished in value. Rather, he relied on data irrelevant to the present case. For example, he compared two homes in Palatine, neither of which was near an office building. He also looked at homes in Schaumburg's Lexington Field's subdivision which showed a lower than market rate of appreciation and was adjoined by a 13-story and a 21-story office building. Overall, Lorenz presented no data to support his contention that the Quartet building or other homes in the area would be diminished in value by the presence of the Harmswood building.

Unlike Lorenz, King analyzed five different office complexes of varying heights within 50 to 125 feet or each other; he found that no one office building had a negative impact on the other. Regarding the homes to the north, King noted two sales that occurred after the Harmswood site plan was approved. Both homes sold without any complications. One home sold for a higher price than expected. However, regardless of King's testimony, plaintiffs fails to show any diminution in value of either the adjoining homes or the Quartet building.

Accordingly, the order of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.