THE CITY OF CHICAGO HEIGHTS, Plaintiff-Appellant, v. LIVING WORD
OUTREACH FULL GOSPEL CHURCH AND MINISTRIES, INC., Defendant-
Appellee.

First District (3rd Division)   Nos. 1—97—4627, 1—98—0929 cons.

Opinion filed December 16, 1998.—Modified on denial of rehearing
February 3, 1999.

Raymond A. Hauser, John M. Izzo, and Todd K. Hayden, all of Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights, for appellant.

John W. Mauck and Christine M. Reidy, both of Mauck, Bellande & Cheely, of Chicago, for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiff, the City of Chicago Heights, sued to enjoin defendant from violating an ordinance that prohibited religious organizations from locating a house of worship in a part of the city zoned commercial. The court entered judgment for defendant. Plaintiff appeals. We vacate in part and reverse and remand with directions to grant the injunctive relief sought by the city.

Chicago Heights (the city) adopted a comprehensive zoning plan in December 1995, with an announced purpose to counteract an economic decline in the city. The plan designated Lincoln Highway a commercial corridor to foster economic development. The Lincoln Highway area was zoned B-2, commercial. Under the city zoning plan, churches may locate anywhere in a residential zone. Churches may locate in a B-2 commercial zone with a special use permit.

Defendant, Living Word Outreach Full Gospel Church and·

Ministries, Inc. (the Church), bought a former Masonic temple in January 1996. The temple was located at 400 West Lincoln Highway in the city in the B-2 zone. City officials told Church officials that a special use permit was required. The Church had made the special use permit a condition precedent in the original contract to buy the temple, but the condition was omitted in the final contract. The Church took possession of the building on January 12, 1996, and only then applied for a special use permit.

To obtain a special use permit in the city, the applicant must establish that the special use will not (1) be unreasonably detrimental to or endanger the public, health, safety, morals, comfort or general welfare; (2) be injurious to the use and enjoyment of other property in the immediate vicinity or substantially diminish and impair property values in the neighborhood; or (3) impede the normal and orderly development and improvement of surrounding property for permitted uses. The applicant must also show that there is adequate ingress and egress, utilities, access roads and drainage facilities and that the use otherwise conforms to the district regulations. Chicago Heights Zoning Ordinance § 12—6.6 (1972).

The Church's application was presented to the city council, which sent it to the zoning board of appeals for review. The zoning board of appeals forwarded the application to the plan commission for a recommendation. The plan commission recommended to the zoning board of appeals that the application be denied. After a hearing, the zoning board recommended to the city council that the application be denied.

The city council denied the application because the property is located in a commercial corridor the city "targeted" for economic development. Despite the lack of a permit, the Church continued church-related activities on the property. The city then issued approximately 65 separate zoning violation citations over a period of seven months. When they were ignored, the city filed this action to enjoin the Church's use of the property. The complaint was styled in a single count and sought an injunction against the Church to prevent further violations of the ordinance.

The Church responded with 14 affirmative defenses, later refiled as a 14-count counterclaim. The counterclaims raise state and federal constitutional issues and include a claim for fees under section 1988 of the United States Code (the Code) (42 U.S.C. § 1988 (1994)).

After a hearing, the trial court denied the city's injunction. The court then found that the city improperly denied the special use permit, concluding that all requirements for a permit were satisfied. The court rejected the Church's alternative argument that the use was a continuing nonconforming use. The court said that because of

its ruling, "it need not reach the constitutional defenses raised by the Church." The court also said that its ruling "terminates the lawsuit." The order reflecting the court's ruling was entered on December 12, 1997, and read as follows:

> "This court having heard all the testimony and carefully considered all the evidence and argument finds in favor of the Plaintiff City on the issue of continuation of a legal non-conforming use and in favor of the Defendant Church on the issue of whether the special use permit should have been granted and finds that the permit was improperly denied. The Court finds that it need not reach the constitutional defenses raised by the Church. This is a final and appealable order and no just reason exists to delay enforcement or appeal."

The city filed a notice of appeal on December 16, 1997.

The Church filed a petition for attorney fees on January 7, 1998. This petition argued that, because the court's ruling was based on constitutional grounds, attorney fees were warranted under section 1988 of the Code. 42 U.S.C. § 1988 (1994). In an order entered on February 26, 1998, the court expanded its order of December 12, 1996. The court permanently enjoined the city from enforcing the ordinance against the Church at the Lincoln Highway location. The court also found that the city's actions violated the free exercise clause of the United States Constitution and granted relief under count VI of the Church's counterclaim. This count alleged that the special permit requirement burdened and infringed on the Church's right of free exercise of religion. The court then ordered further proceedings to determine the fee award. The city appealed this order by a second notice of appeal filed on March 16, 1998. These appeals were consolidated.

The city makes two arguments on appeal: (1) the circuit court lacked jurisdiction to enter the February 26, 1998, order; and (2) the court erred in substituting its reading of the zoning ordinance for that of the city council.

■ The first issue requires us to examine our jurisdiction over this appeal. To confer appellate jurisdiction, the judgment or order appealed from must be final. *Rice v. Burnley*, 230 Ill. App. 3d 987, 596 N.E.2d 105 (1992). An order is final if it fixes absolutely and finally the rights of the parties and decides the litigation on the merits so that the only thing left is execution of the judgment, if affirmed. *Nelson v. United Airlines, Inc.*, 243 Ill. App. 3d 795, 799, 612 N.E.2d 980 (1993).

The December 12 order contained Supreme Court Rule 304(a) language. 155 Ill. 2d R. 304(a). We note that there was a fee petition pending at the time the December 12 order was entered in the form of count I of the counterclaim.

The dispute in this case was whether the city's denial of the Church's special use permit application was proper. The court entered an order finding that it was not. The court stated on the record that this finding terminated the controversy between the parties.

This conclusion is not altered by the court's failure to mention the counterclaim or rule on the constitutional claims. The counterclaim consisted of the earlier filed affirmative defenses. The counterclaim not only sought a finding that the Church met the requirements for a special use permit, but also raised constitutional issues.

In *Lynch Imports, Ltd. v. Frey*, 200 Ill. App. 3d 781, 785, 558 N.E.2d 484 (1990), we held that an order granting the seller summary judgment on its complaint, but not addressing the buyer's counterclaim, was nevertheless final and appealable because the rights and liabilities in the complaint and counterclaim were identical. The seller's complaint sought to recover the purchase price of a car. The counterclaim sought damages for the seller's failure to provide an acceptable car. The buyers had a contract right to reject the car. The court reasoned that an order disposing of the complaint necessarily disposed of the counterclaim because no further action could be taken on the counterclaim. *Lynch*, 200 Ill. App. 3d at 785. No Rule 304(a) language was needed to vest the appellate court with jurisdiction. *Lynch*, 200 Ill. App. 3d at 785. See also *Waters v. International Harvester Co.*, 244 Ill. App. 3d 741, 614 N.E.2d 466 (1993) (where the issue in the initial complaint is exactly the same as that necessary to decide the counterclaim, summary judgment on the complaint will be a final judgment notwithstanding the order's silence on the counterclaim).

Counts XIII and XIV of the counterclaim alleged that the special use permit was improperly denied and that the requirements for the permit were met. These counts repeated the Church's initial affirmative defense to the complaint. By ruling against the city on the complaint, and finding that the Church met the requirements for a special use permit, the court effectively ruled on counts XIII and XIV of the counterclaim. Although the court's oral remarks before entry of the order suggested that the city's denial violated the Church's constitutional rights, the remarks were not the reason for the court's finding that the denial was improper. We read the statements made in open court and the wording of the December 12 order as a finding by the court that the Church met the requirements for a special use permit. Because the requirements were met, the court ruled that the Church's application should have been approved and the denial was arbitrary and capricious. The order's silence on the claims asserted in counts II through XII of the counterclaim does not affect our jurisdiction. In its

December 12 ruling, the court stated that it did not need to reach the other constitutional issues in light of its ruling. The court was able to decide the controversy on state law grounds. This was proper. A court should avoid constitutional questions where the case may be decided on other grounds. *In re S.G.*, 175 Ill. 2d 471, 479, 677 N.E.2d 920 (1997). The December 12 order terminated the controversy between the parties.

■ Filing a notice of appeal divests the trial court of jurisdiction in a case. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 162, 692 N.E.2d 306 (1998). Appellate jurisdiction attaches *instanter* and the trial court may not enter orders changing or modifying a judgment or its scope or interfering with review of the judgment. *In re Marriage of Ward*, 267 Ill. App. 3d 35, 641 N.E.2d 879 (1994); *In re Marriage of Sawyer*, 264 Ill. App. 3d 839, 637 N.E.2d 559 (1994).

Since the December 12 order was final with respect to all issues but the fee petition, the December 16 notice of appeal divested the court of jurisdiction on all substantive matters before the court. But orders entered after filing of a notice of appeal are valid if the substantive issues on appeal are not altered so as to present a new case to the reviewing court. *R.W. Dunteman*, 181 Ill. 2d at 162. The February 26, 1998, order is valid only if it did not expand or modify the judgment entered on December 12, 1997. We conclude that it did.

The February 26, 1988, order contained the court's ruling on the Church's January 7, 1998, fee petition under section 1988 of the Code. 42 U.S.C. § 1988 (1994). This section authorizes fees for constitutional violations. But the court went on to grant the Church relief under count VI of its counterclaim, finding that the city's actions violated the free exercise clause of the first amendment. The court also permanently enjoined the city from enforcing the zoning ordinance against the Church. The February 26, 1998, order is a nullity because it expanded and modified the December 12, 1997, order. The order purported to rule on claims that the court determined it need not reach in its December 12 ruling and over which it no longer had jurisdiction.

But our jurisdiction still depends on the nature of the Church's January 7, 1998, motion for fees. If the petition is a proper posttrial motion, as long as it remains unresolved, the underlying judgment is not final and complete jurisdiction remains with the trial court. *Spurgeon v. Alton Memorial Hospital*, 285 Ill. App. 3d 703, 707, 674 N.E.2d 517 (1996). If the motion is only a fee petition, our jurisdiction is unaffected because the original order contained Rule 304(a) language. *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7, 694 N.E.2d 562 (1998). As we have noted, the fee claim remained unresolved when the December 12 order was entered.

■ To qualify as a posttrial motion, the movant must ask for at least one of the forms of relief specified in section 2—1203 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1203 (West 1996)), specify grounds that would warrant granting the relief, and file the motion with the court with proof that copies have been served on all parties. *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 291, 635 N.E.2d 1068 (1994). Section 2—1203 allows a party to ask for a rehearing, new trial or modification of the judgment. 735 ILCS 5/2—1203 (West 1996).

■ The Church's motion is entitled "Defendant-Counter-Plaintiff's Motion to Determine if Attorneys' Fees Costs and Other Relief is Awardable." The motion consists of seven paragraphs, over 4¹/₂ pages. The first six paragraphs set out the Church's argument for attorney fees based on section 1988 of the United States Code. The last paragraph is one sentence. It alternatively asks the court to rule on the other constitutional claims if the court decides that the basis of the court's December 12 ruling does not by itself authorize a fee award under section 1988. The Church states that "it is necessary to reach [the] counterclaims to decide the requested relief of attorney's fees."

We believe the January motion cannot be read as a fee petition. The motion does not challenge the judgment or ask for a new trial. The relief asked for is on the Church's entitlement to fees. While the last paragraph arguably requests a form of relief cognizable under section 2—1203, the request is cursory and fails to state the legal and factual basis upon which to base this relief. *Sho-Deen*, 263 Ill. App. 3d at 292.

At most, the January motion can be characterized as a hybrid motion in the sense that it is a fee petition with an alternative request to reconsider the court's earlier refusal to reach the constitutional claims. But hybrid motion practice is not favored. See *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 700 N.E.2d 202 (1998) (considering the procedural effects and requirements of a combined section 2—619.1 motion). Further, the motion fails to identify grounds for the requested relief. So we conclude that the filing of the January motion had no effect on our jurisdiction over this appeal. The court only had jurisdiction on February 26 to rule on the request for fees. All other claims for relief were resolved in the December order. To the extent that the February order makes additional findings and grants additional injunctive relief, it is vacated.

We now consider the substantive issue in this case: whether the city's denial of the special use permit was proper. In reaching its decision, the court conducted a two-step analysis. It first considered the city's ordinance on special use permits and applied each criterion to

the Church. Having decided that the Church met the requirements for a special use permit, the court applied the reasoning expressed by the supreme court in *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals*, 25 Ill. 2d 65, 71, 182 N.E.2d 722 (1962). The court then found that the denial in this case was arbitrary and capricious and not substantially related to the public health, safety or welfare. *Columbus Park*, 25 Ill. 2d at 73.

The city contends that the court erred because it substituted the city council's judgment for its own, which the city argues is not permitted when legislative action is reviewed. *American National Bank & Trust Co. v. Village of Skokie*, 181 Ill. App. 3d 189, 196, 536 N.E.2d 926 (1989).

■ Zoning ordinances and special uses are presumptively valid. *American National Bank*, 181 Ill. App. 3d at 196. On review, the issue is whether the denial was arbitrary or capricious. *Copley Memorial Hospital, Inc. v. City of Aurora*, 99 Ill. App. 3d 217, 221, 425 N.E.2d 493 (1981). Generally, the challenger must prove by clear and convincing evidence that the zoning ordinance as applied to its property is arbitrary and unreasonable and not related to the public health, safety and morals. *Mobil Oil Corp. v. City of Rolling Meadows*, 214 Ill. App. 3d 718, 725 (1991); *National Pride Equipment, Inc. v. Village of Niles*, 109 Ill. App. 3d 639, 440 N.E.2d 1053 (1982). But different presumptions arise when zoning ordinances implicate constitutional guarantees of freedom of religion. *Our Saviour's Evangelical Lutheran Church v. City of Naperville*, 186 Ill. App. 3d 988, 542 N.E.2d 1158 (1989); *South Side Move of God Church v. Zoning Board of Appeals*, 47 Ill. App. 3d 723, 728, .365 N.E.2d 118 (1977). Under these circumstances, the ordinance does not enjoy presumptive validity (*Columbus Park*, 25 Ill. 2d at 71-72), and the burden of proof shifts to the city.

■ In its petition for rehearing, the Church brings to our attention House Bill 2370, the Religious Freedom Restoration Act (the Act) (Pub. Act 90—806, eff. December 2, 1998). This act, signed by the Governor on December 4, 1998, applies retroactively and adopts the compelling interest test set out in *Wisconsin v. Yoder*, 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972). The Church contends that since the Church's right to free exercise of religion is burdened by the ordinance, the Act requires that the city meet the *Yoder* burden of proof: that the city's interest in adoption of the zoning ordinance is compelling and that the ordinance is the least restrictive means of furthering that interest. We agree, but by applying the compelling state interest test, we conclude that the city met its burden.

■ The city submitted evidence that its zoning plan was designed to invigorate the commercial corridor to regenerate declining revenues

and create a strong tax base. Even a substantial burden on the free exercise of religion is justified by the broad public interest in maintaining a sound tax system. *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699-700, 104 L. Ed. 2d 766, 786-87, 109 S. Ct. 2136, 2149 (1989). The city has a cognizable compelling interest to enforce its zoning laws. We conclude that the public health, safety and morals are served by the ordinance. Reserving areas for commercial activity both protects residential areas from commercial intrusion and fosters economic stability and growth. See *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 39 L. Ed. 2d 797, 804, 94 S. Ct. 1536, 1541 (1974). The Act next requires us to determine whether the ordinance is the least restrictive means of furthering the city's interest.

The record shows that approximately 60% of Chicago Heights is zoned for noncommercial use. Under the zoning ordinance, churches may locate anywhere in these zones without a special permit. The ordinance only affects 40% of the city. Because the Church has free access to a majority of the city, we conclude that the least restrictive means are used to further the city's interest. The court erred in finding that the city improperly denied the special use permit application.

The February 26, 1998, order is vacated to the extent that it makes rulings on issues other than fees. The judgment of the trial court is reversed. The case is remanded with directions to grant the injunctive relief sought by the city.

Vacated in part and reversed and remanded with directions.

BURKE and McBRIDE,[1] JJ., concur.

---

[1]Justice Leavitt participated in the disposition of this case before leaving the appellate court. Justice McBride, his replacement, read the briefs and heard tapes of oral arguments.