No. 3--98--0107

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

COUNTY OF KANKAKEE, ) Appeal from the Circuit Court

) for the 21st Judicial Circuit Plaintiff-Appellee, ) Kankakee County, Illinois )

v. ) No. 95--OV--973 ) 

EUGENE ANTHONY and ) 

SHEILA ANTHONY, ) Honorable ) Sheldon W. Reagan,

Defendants-Appellants. ) Judge Presiding

Modified Upon Denial of Rehearing

JUSTICE HOMER delivered the opinion of the court: 

The County of Kankakee filed a complaint against Eugene and Sheila Anthony alleging that they violated county zoning ordinances by constructing and operating a private school in their garage without obtaining the proper permits.  The county sought imposition of a fine and a permanent injunction.  In response, the Anthonys contended, 
inter
 
alia
, that the zoning ordinances were unconstitutional.  The trial court ruled in favor of the county, and the Anthonys appealed.  After our careful review, we affirm.

FACTS

Pastor Eugene Anthony is an ordained minister of the Seventh-day Adventist Church; his wife, Sheila, is an experienced teacher with a masters degree in education.  Upon moving to the  Kankakee area, the Anthonys decided to establish a parochial school for their two children and the children of other Seventh-day Adventists in the area.

In April 1995, Pastor Anthony began to renovate a detached garage located on his residential property into a one-room school house.  Before construction was underway, Pastor Anthony spoke with Robert Roach, a county building inspector.  Based upon this conversation, Pastor Anthony believed it was unnecessary to obtain any permits for his renovation project.  Although Pastor Anthony testified that he spoke openly with Roach about his plans to build the school, Roach testified that Pastor Anthony explained that he only wanted to insulate his garage and said nothing about a school.

 The following month, Dan DeValk, another county building inspector, became aware of the extensive construction taking place in the Anthonys' garage.  DeValk informed Pastor Anthony that he could not continue the renovation without obtaining a building permit.

Pastor Anthony then met with DeValk and Vicki Senesac, a supervisor from the county building department, to inquire about obtaining a building permit.  When Pastor Anthony explained that he intended to operate a religious school in the garage once it was renovated, he was advised that the zoning code prohibited him from doing so without first obtaining a variance and a special use permit from the Kankakee County Zoning Board of Appeals (the zoning board).  The variance was required because Pastor Anthony's property, which measured 100 feet by 168 feet, did not meet the minimum acreage requirements for the proposed special use. 

On June 7, 1995, DeValk issued Pastor Anthony a building permit for the stated purpose of converting his garage for personal storage and use.  Pastor Anthony asserted that he believed that the building permit was all he needed to create his school.  However, he later testified that he knew that he needed to obtain a variance and special use permit to legally operate the school, but he believed that it was simply a formality.  He began that process in July of 1995 when his attorney filed the applications with the zoning board.

Despite the fact that his applications for a variance and special use permit had not been heard or decided by the zoning board, Pastor Anthony began operating the school soon after the renovation was complete late in August of 1995.  In October 1995, the County filed a two-count complaint alleging that the Anthonys were in violation of section V.D.2.b.4 of the 1967 zoning code by operating a school on their residential property without obtaining a variance or special use permit.  Section V.D.2.b.4 provides that the following use of residential property is considered a special use and allowable only by a special use permit:

"Schools, parochial, private or not for profit and boarding schools, public or private--on a lot not less than two (2) acres for a nursery school, eight (8) acres for an elementary school, and thirty (30) acres for a high school."

Count I sought imposition of a fine and count II sought issuance of a permanent injunction against the operation of the school.  In response, the Anthonys filed an answer, affirmative defenses, and a nine-count counterclaim alleging that the ordinances violated their rights under the state and federal constitutions, namely, equal protection, free exercise of religion, freedom of speech, and freedom of assembly.  The Anthonys also alleged that the ordinances violated their rights under the Religious Freedom Restoration Act of 1993 (42 U.S.C.A. §2000bb 
et
 
seq.
 (West 1994)).
(footnote: 1)
 Because a new zoning code was implemented by the county in May 1996 while this action was still pending, the county subsequently amended its complaint to include allegations that the operation of the school also violated section 8.02(F) of the 1996 zoning code.  Section 8.02(F) provides that the following is a permitted use of residential property:  

"Schools, non-boarding, elementary, junior high and high, and accessory uses, buildings and structures on a lot not less than 3 acres."

After a bench trial, the judge made a written decision with respect to count I finding that (1) by their own admission, the Anthonys constructed and operated the school with full knowledge that they were not in compliance with zoning ordinances, and (2) the 1996 county zoning code was properly enacted and passed constitutional scrutiny.  In a subsequent order, the trial court imposed a fine of $200 against the Anthonys based upon count I.

After another hearing, the court rendered its decision on count II, issuing a preliminary injunction against the Anthonys' operation of the school in their garage.  The trial judge later made the injunction permanent.  During the pendency of this case, the Anthonys' application for a variance and special use permit was denied in a separate proceeding before the zoning board.  The propriety of that zoning board decision is not a part of this appeal. 

On appeal, the Anthonys contend that the trial court erred in: (1) applying the 1996 zoning code rather than the 1967 provisions, (2) finding that the Anthonys were in violation of county zoning regulations, and (3) finding that the Anthonys' constitutional claims had no merit.

ANALYSIS

I. Applicability and Validity of the 1996 Zoning Code

The Anthonys argue that the trial court erred in applying the 1996 zoning code provisions in this case because:  (1) they acquired a vested right under the 1967 zoning code since their applications for a variance and special use permit were denied by the zoning board under that code in a separate proceeding and the county initially charged them with violating that code, and (2) the 1996 zoning code is void because it was not properly enacted in accordance with section 5/12014(b) of the Counties Code (55 ILCS 5/5--12014(b) (West 1996)).

Resolution of this issue requires this court to analyze the construction and application of both statutes and ordinances.  An appellate court need not defer to the decision of the trial judge when reviewing such matters because they are considered questions of law.  
Constantine v. Village of Glen Ellyn
, 217 Ill. App. 3d 4, 16, 575 N.E.2d 1363, 1371 (1991).  Consequently, in deciding whether the trial court erred in finding the 1996 zoning code validly enacted and applying it in the instant case, we will conduct 
de
 
novo
 review.  See 
County of Lake v. Zenko
, 174 Ill. App. 3d 54, 60, 528 N.E.2d 414, 418 (1988).

Well-settled Illinois law holds that a legislative body has a continuing right to amend a statute or ordinance even while litigation is pending involving the legislation.  
Sagittarius, Inc. v. Village of Arlington Heights
, 90 Ill. App. 3d 401, 404, 413 N.E.2d 90, 93 (1980).  In such instances, the court must decide the case in accordance with the law in effect at the time the court renders its decision (
Sagittarius, Inc.
, 90 Ill. App. 3d at 404, 413 N.E.2d at 93), unless to do so would adversely affect a vested right (
Maiter v. Chicago Board of Education
, 82 Ill. 2d 373, 390-91, 415 N.E.2d 1034, 1042 (1980)).

However, the Anthonys argue that the 1996 zoning code was not validly enacted because it did not receive a simple majority of the votes of the county board as required by section 5--12014(b) of the Counties Code.  55 ILCS 5/5--12014(b) (West 1996).  After our careful review, we agree.

The power to regulate the use of land through zoning ordinances is a legislative function conferred upon county boards by statute.  See 55 ILCS 5/5--12001 
et
 
seq.
 (West 1996).  Courts are precluded from reviewing the propriety of a county board's legislative enactment unless it was accomplished in violation of a statute or constitutional provision.  
Illinois Gasoline Dealers Association v. City of Chicago
, 119 Ill. 2d 391, 404, 519 N.E.2d 447, 452-53 (1988).  In this regard, the General Assembly has established certain procedures which govern the manner in which county boards carry out their legislative function.  Compliance with these statutory procedures is a prerequisite to the valid enactment of an ordinance.  See 
Traders Development Corp. v. Zoning Board of Appeals of Peoria
, 20 Ill. App. 2d 383, 156 N.E.2d 274 (1959).  When a county board has failed to follow proper procedures in amending a zoning ordinance, the amendment is void.  See 
Village of Southern View v. County of Sangamon
, 228 Ill. App. 3d 468, 592 N.E.2d 639 (1992); 
Forestview Homeowners Association, Inc. v. Cook County
, 18 Ill. App. 3d 230, 309 N.E.2d 763 (1974).

Unless otherwise provided, matters before a county board may be voted on and decided by a majority of the members present at a meeting so long as there is a quorum.  55 ILCS 5/2--1005 (West 1996).  However, the parties agree, and a review of the legislative history confirms, that section 5--12014(b) of the Counties Code creates an exception to this general rule when a county board seeks to amend the text of a zoning ordinance which affects the whole county.  Section 5--12014(b) provides in pertinent part: 

"text amendments may be passed at a county board meeting by 
a simple majority of the elected county board members
, unless written protests against the proposed text amendment are signed by 5% of the land owners of the county, in which case such amendment shall not be passed except by the favorable vote of 3/4 of all the members of the county board."  (Emphasis added.)  55 ILCS 5/5--12014(b) (West 1996).

Therefore, under section 5--12014(b), text amendments, in the absence of a protest, must pass by a simple majority vote of the 
entire county board, not just a majority of the members attending the meeting.  There being no written protest against the proposed amendment of the zoning code in the instant case, the amendment required the approval of 15 of the 28 members of the county board for it to prevail.

The record of the roll call vote taken at the county board's meeting shows that the vote on the 1996 zoning code was as follows:  14 "aye" votes, 11 "nay" votes, 1 "present" vote, and 2 members absent.  In deeming the ordinance passed, the "present" vote was included with the fourteen "aye" votes to arrive at the total of fifteen required for passage.  

The Anthonys maintain that the county board erred in considering the "present" vote as an "aye" vote; therefore, the 1996 zoning code, receiving only 14 affirmative votes when 15 were required, is invalid.  In response, the county contends that it was proper for the county board to consider the member voting "present" as acquiescing with the "aye" votes.  Interestingly, each party argues that our supreme court's decision in 
Prosser v. Village of Fox Lake
, 91 Ill. 2d 389, 438 N.E.2d 134 (1982), supports its position.

In 
Prosser
, the court in construing a municipal statutory provision made the following pronouncement:

 "The effect of voting to 'abstain,' or to 'pass,' or voting 'present' or of refusing to vote when present at a meeting 
depends on whether 'the affirmative vote' of a majority or 'the concurrence' of a majority, of either the quorum or of all members then holding office, is required for passage.
  If 'the affirmative vote' of a majority of either standard is required ***, then nothing less than a majority of 'yea' or 'aye' votes will result in passage.  An attempt to vote to 'abstain' or in any manner other than 'yea' or 'nay,' or a failure to vote shall be considered to have the effect of a 'nay' vote.  Where the 'concurrence' of a majority is required for passage, the holding in most of the jurisdictions where the issue has been considered is that a vote of 'pass,' 'present,' or 'abstain' or a failure to vote when present constitutes an acquiescence or concurrence with the members of the majority who did vote on the question involved."  (Emphasis added.)  
Prosser
, 91 Ill. 2d at 395, 438 N.E.2d at 136.

We find 
Prosser
 of little assistance to us in the instant analysis.  In 
Prosser
, the court was faced with the task of interpreting a statute that expressly required "the concurrence of a majority of all the members."  It provides no direction where, as in the instant case, the statute contains no such language.

Instead, we must follow traditional rules of statutory construction to determine whether a "simple majority" includes both present and aye votes.  The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature.  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 16, 678 N.E.2d 1009, 1017 (1996).  In interpreting a statute, we cannot read into it words which are not within the intention of the legislature as determined from the statute, nor can we restrict or enlarge the meaning of the statute.  
Trigg v. Sanders
, 162 Ill. App. 3d 719, 727, 515 N.E.2d 1367, 1373 (1987).  Rather, we must look to the language of the statute and give the words used their plain and ordinary meanings.  

A "majority" is defined generally as "[t]he number greater than half of any total."  Black's Law Dictionary 955 (6th ed. 1990).  We conclude that the legislature's use of the term "simple majority" in section 5--12014(b) was merely a manner of referring to an amount equaling 
more than half.  The term "simple" was used to differentiate this type of majority vote from other types of majority votes, including, "two-thirds majority," "super-majority," and "extraordinary majority."  There is nothing in section 5--12014(b) indicating that the use of the term "simple majority" was intended to mean a "concurrence of the majority" as defined in the 
Prosser
 case.

Furthermore, common principles of parliamentary procedure provide that when an individual votes "present" or "I abstain," that individual is indicating that he or she does not wish to vote on a particular question.  See Robert's Rules of Order §44, at 414 (9th ed. 1990).  We determine that in the absence of express direction to the contrary in an applicable statute or rule, such a response cannot be considered a vote in favor of the pending measure.  This principle is illustrated by the definition of "majority vote" in Robert's Rules of Order which provides:

"The word majority means 'more than half'; and when the term majority vote is used without qualification *** it means more than half of the votes cast by persons legally entitled to vote, 
excluding blanks or abstentions
, at a regular or properly called meeting at which a quorum [ ] is present."   (Emphasis added.)  Robert's Rules of Order §43, at 395 (9th ed. 1990). 

Based upon the forgoing analysis, we hold that the phrase "simple majority of the elected county board members" in section 5--12014(b) requires the affirmative votes of more than half of all the members of the county board.  Because the 1996 zoning code was not approved by a simple majority of the elected county board members, it must be considered void; and the 1967 zoning code governs this case.

Although we determine that the trial court erred in applying the 1996 zoning code, we are not bound by the reasoning set forth by the trial court in rendering its decision.  
Heepke v. Heepke Farms, Inc.
, 271 Ill. App. 3d 935, 940, 649 N.E.2d 958, 962 (1995).  Rather, we may reverse or affirm on any grounds supported by the record.  
Marriage of McFarlane
, 160 Ill. App. 3d 721, 726, 513 N.E.2d 1146, 1149 (1987).  The parties proceeded to trial based upon both the 1967 and 1996 zoning codes; therefore, we must determine whether the Anthonys' school violated the 1967 zoning code.

II. Violation of the 1967 Zoning Code

Proceedings for enforcement of an ordinance are quasi-criminal in nature.  In such cases, the ordinance violation must be proven by a clear preponderance of the evidence.  
City of Peoria v. Heim
, 229 Ill. App. 3d 1016, 1017, 594 N.E.2d 778, 780 (1992).  On review, a trial court's factual determinations regarding the violation of an ordinance will not be reversed unless they are contrary to the manifest weight of the evidence.  
American National Bank & Trust Co. of Chicago v. Village of Skokie
, 181 Ill. App. 3d 189, 196, 536 N.E.2d 926, 930 (1989).  After our careful review of the record, we determine that the trial court's determination that the Anthonys' school constituted an illegal use of their property was supported by the evidence.

The 1967 zoning code defines "principal use" as follows:

"The main use of land or buildings as distinguished from a subordinate or accessory use.  It may either be a permitted or special use." 

From the plain language of this provision, it is clear that a property may have only one principal use, although it may have subordinate uses.  Therefore, the concurrent use of the property as a single-family residence and a school is permissible only if one of these uses can be considered as subordinate to the other.

The 1967 zoning code defines an "accessory use," in pertinent part as:

"A subordinate use which is clearly and customarily incidental to the principal use of a main building or premises and which is located on the same lot as the principal building or use ***."

It is clear from the record that the principal use of the Anthonys' property was as a single-family dwelling.  Because a school is not something customarily found as incidental to a single-family home, such use cannot be considered an accessory use of the property.  Therefore, the Anthonys' use of their garage as a school was an impermissible use of their residential property under the 1967 zoning code.

III. Constitutional Claims

The final series of issues raised by the Anthonys involve the trial court's decision to deny them relief on their contentions that the 1967 zoning ordinance is unconstitutional.
(footnote: 2)
 It is well settled that courts should avoid declaring legislation unconstitutional if the case does not require it.  
East St. Louis Federation of Teachers, Local 1220 et al. v. East St. Louis School District No. 189 Financial Oversight Panel
, 178 Ill. 2d 399, 408, 687 N.E.2d 1050, 1056-057 (1997).  Consequently, reviewing courts will decide constitutional questions only where resolution of those questions is essential to disposition of the appeal.  
Werner v. Botti, Marinaccio & DeSalvo
, 205 Ill. App. 3d 673, 677, 563 N.E.2d 1147, 1151 (1990).  If the case may be decided on other grounds, the constitutionality of the statute should not be addressed.

In this case, we have determined that irrespective of their  constitutional contentions, the Anthonys' use of their property as a school violated the zoning code because there can be only one principal use of their residential property and a school does not qualify as an accessory use.  Having decided the case on this basis, there is no need to address the constitutional challenges raised by the Anthonys in this appeal.

The Anthonys have also sought leave to cite additional authority, namely, the recently enacted Illinois Religious Freedom Restoration Act (Pub. Act 90--806, eff. July 1, 1998).  Although we acknowledge the significance of this enactment, we find it unnecessary to consider it in the instant case in light of our decision to resolve the case on grounds unrelated to the constitutional claims. 

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

Judgment affirmed.

BRESLIN and KOEHLER, J.J., concur.

FOOTNOTES
1:     
 This federal law was deemed unconstitutional by the United States Supreme Court while this case was pending before the trial court (
City of Boerne v. Flores
, 521 U.S. 507, 138 L. Ed. 2d 624,  117 S. Ct. 2157 (1997)), so the claims based upon it were not pursued at trial.

2:     
 The Anthonys' constitutional claims with respect to the 1967 zoning ordinance were based upon the fact that it subjected private schools to more stringent zoning requirements than public schools.  Without any acreage limitation, public nonboarding schools were considered a permitted use of property in a residential area and no special use permit was required.